UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JARVIS BALLARD, | * | CIVIL DOCKET NUMBER: |
| | * | |
| Plaintiff, | * | 22-2427 |
| | * | |
| VERSUS | * | |
| | * | SECT. |
| SHERIFF JAMES POHLMANN, IN HIS | * | |
| OFFICIAL CAPACITY AS THE SHERIFF | * | JUDGE |
| OF ST. BERNARD PARISH; SCOTT DAVIS, | * | |
| CURRENT OR FORMER DEPUTY OF THE | * | |
| ST. BERNARD PARISH SHERIFF'S | * | MAG. |
| OFFICE; RAY WHITFIELD, CURRENT | * | |
| OR FORMER DEPUTY OF THE | * | |
| ST. BERNARD PARISH SHERIFF'S | * | |
| OFFICE; ALBERT CLAVIN, CURRENT | * | |
| OR FORMER DEPUTY OF THE | * | |
| ST. BERNARD PARISH SHERIFF'S | * | |
| OFFICE; ABC and XYZ INSURANCE | * | |
| COMPANIES; | * | |
| | * | |
| Defendants. | * | |

**************************************

## **COMPLAINT**

1.     This civil action seeks money damages, punitive damages, and attorneys' fees for the

extensive and extraordinary injuries, losses, and damages suffered by Plaintiff JARVIS

BALLARD, who was wrongfully convicted for an aggravated rape that occurred on January 10,

1998.  Mr. Ballard received a life sentence based on the wrongful conviction, and spent 23 years,

6 months, and 23 days in prison for a crime he did not commit.  This wrongful incarceration was

the direct and proximate result of the unconstitutional, illegal, and tortious conduct of the

Defendants, as described below.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988,

the Fifth and Fourteenth Amendments to the United States Constitution, and Louisiana Civil

Code Article 2315.

## I.    JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1988.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions. Plaintiff also invokes supplemental jurisdiction over claims under state law pursuant to 28 U.S.C. §1367.

## II.    PARTIES

### Plaintiff

3.    **JARVIS BALLARD** is an adult citizen of the United States and is domiciled in the Eastern District of Louisiana.

### Defendants

**Named Defendants herein are:**

4.    **SHERIFF JAMES POHLMANN** is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  He is sued solely in his official capacity as the current Sheriff of St. Bernard Parish, and the successor in office to the past Sheriff of St. Bernard Parish, Jack Stephens.  Former Sheriff Stephens was the Sheriff and final policy maker of the St. Bernard Parish Sheriff's Office ("SBPSO") at all times relevant to this complaint.

5.    **SCOTT DAVIS**, in his individual capacity as a current or former detective sergeant with the SBPSO, is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all pertinent times, he was employed by SBPSO and was acting in the course and scope of his employment.

6.    **RAY WHITFIELD**, in his individual capacity as a current or former detective sergeant with the SBPSO, is an adult citizen of the State of Louisiana and domiciled in the Eastern

District of Louisiana.  At all pertinent times, he was employed by SBPSO and was acting in the course and scope of his employment.

7.    **ALBERT CLAVIN**, in his individual capacity as a current or former detective sergeant with the SBPSO, is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.  At all pertinent times, he was employed by SBPSO and was acting in the course and scope of his employment.

8.    **ABC** and **XYZ INSURANCE COMPANIES** are yet unknown insurance companies who, upon information and belief, have issued and currently have in effect one or more policies of insurance covering one or more of the Defendants named herein.

### III. FACTUAL ALLEGATIONS

9.    Around 2:00 a.m. on the morning of January 10, 1998, three individuals—Ulysses Pierre, Sidney Williams, and Quandreka Ballard—traveled in a car to the house of N.D., a white woman who was approximately sixty years old at the time.  N.D.'s house was located in the Violet area of St. Bernard Parish, and she was babysitting her three-year old grandson on this evening.

10.    Quandreka Ballard is the Plaintiff's sister, and she was seventeen (17) years old at the time.  Ulysses Pierre is a cousin of the Plaintiff and of Quandreka, with whom he was especially close, and he was twenty (20) years old.  Quandreka was dating Sidney Williams, who was twenty-nine (29) years old.  All three are African-Americans.

11.     When they arrived at N.D.'s house, Ulysses Pierre and Sidney Williams knocked on the door.  When she answered, they forced their way inside.  Both of them proceeded to rape her and steal some of her belongings, which they loaded into the car.  Quandreka remained outside in the

car while these events transpired.  The three drove away from the location approximately 25 to 30 minutes after they arrived.

12.     The Plaintiff, **JARVIS BALLARD**, was not involved in the crimes perpetrated against the victim N.D. in any way.

13.     Afterwards, when the police responded to the scene, they took statements from the victim and two neighbors, all of whom stated that only two people entered the victim's house that night. Additionally, the police learned from the neighbors—a mother and son—that Ulysses Pierre had knocked on their door shortly before the crime asking for the son, with whom Pierre was acquainted.  The mother declined to let Pierre into her house, but she awoke her son shortly after and they both stated that they watched through their window as Pierre and another individual went from N.D.'s house to the car.  The mother also indicated she saw a female figure sitting in the car.

14.     Shortly after the police arrived at the scene, around 4:00 a.m., a SBPSO deputy encountered Pierre and recognized that he was wearing clothing (a red sweat shirt), that matched a description given by the victim and the neighbors.  The deputy attempted to arrest Pierre, but Pierre fled, leaving his sweatshirt behind.  The victim identified the sweatshirt as consistent with what one of the perpetrators was wearing.

15.     Sometime between 9:30 and 10:00 a.m. on the morning of January 10th, SBPSO deputies located and arrested Pierre.  They brought him to the SBPSO Criminal Investigations Bureau in Arabi, Louisiana.  Under questioning, Pierre first told detectives that he was the only person involved in the rape and robbery.  However, on information and belief, Defendants **DAVIS**, **WHITFIELD**, **CLAVIN**, and other unknown SBPSO deputies began to beat and abuse Pierre, including by pepper spraying him numerous times.  Eventually, Pierre changed his story and told

the detectives that he, Sidney Williams, and **JARVIS BALLARD** committed the crime.  Pierre

would later explain that he was terrified by the Defendants' actions, and that he was trying to

protect Quandreka, whom he thought of as a sister, when he named the Plaintiff as a participant

in the crime.  Pierre believed that nothing would ultimately happen to the Plaintiff because the

Plaintiff was not in fact involved in the crime.

16.     At some point during his interrogation, Pierre advised detectives that items from the

robbery had been left in a shed behind a house on Licciardi Lane in St. Bernard.

17.     At approximately 11:00 a.m. on January 10, 1998, the Plaintiff was walking near the

house on Licciardi Lane that Pierre had identified to detectives.  At the time, he was eighteen

(18) years old with just a the 10th grade.  He had struggled in school, having been diagnosed

with learning disabilities and behavior disorders, and was a special education student.

18.     Again, the Plaintiff, **JARVIS BALLARD,** was and is innocent of the crimes perpetrated

against the victim.

19.     Despite this fact, the Plaintiff was arrested by SBPSO deputies.  On information and

belief, this arrest occurred prior to Pierre changing his story, and there was no probable cause to

support it.

20.     Alternatively, the basis for the Plaintiff's arrest was the statement of Pierre, which was

involuntary and coerced by the actions of Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN**,

who employed unlawful and excessive force against Pierre in order to extract his partially false

confession.

21.     The Plaintiff was brought to the SBPSO CID station, where Pierre was also located.

There, the Plaintiff encountered Defendant **DAVIS** and, on information and belief, also

Defendants **WHITFIELD** and **CLAVIN**.  At first, the Plaintiff told the Defendants the truth,

which was that he had no knowledge of and was not involved in the crimes against N.D. However, Defendant **DAVIS** subjected Plaintiff to the same type of unlawful abuse as had been used against Pierre.  **DAVIS** repeatedly pepper sprayed the Plaintiff and threatened him for allegedly having raped an "old lady."  Then, **DAVIS** kicked the Plaintiff so hard in the groin that the Plaintiff would later require surgery to repair the injury.  **DAVIS** struck the Plaintiff other times as well.

22.     On information and belief, Defendants **WHITFIELD** and **CLAVIN** were aware of **DAVIS's** unlawful and abusive actions towards the Plaintiff.  These Defendants failed to intervene to stop **DAVIS** from unlawfully beating and abusing the Plaintiff.

23.     Terrified by Defendant **DAVIS's** actions, the Plaintiff eventually gave a false confession to the crime.  He stated that he, Pierre, and Williams had walked to the victim's house, and that all three had gone inside and that all three had participated in raping and robbing the victim.  The Plaintiff's "confession" contained a number of other details that are completely inconsistent with all other evidence in the case, and the only reason any of the facts matched was because Defendant **DAVIS** fed the Plaintiff information the detectives already knew to repeat back.

24.     The Plaintiff's statement was false, involuntary, and coerced.  The only reason the Plaintiff made this statement was because **DAVIS** kicked him in the groin, struck him, pepper sprayed him, and threatened him.  The other Defendants were aware of and complicit in **DAVIS's** actions.

25.     During the time period when the Plaintiff was being abused and coerced, the victim was also present at the CID.  On information and belief, Defendants **DAVIS**, **WHITFIELD**, and/or **CLAVIN** arranged for the victim to see the Plaintiff while he was in custody.

26.    It is believed that shortly afterwards the victim was presented with two six picture line-ups, one containing a picture of Pierre and one containing a picture of the Plaintiff.  The victim identified Pierre and the Plaintiff as the only two participants in the crime.  She also gave another, more formal statement in which she affirmed again that only two men perpetrated the crime.

27.    On information and belief, the victim's false identification of the Plaintiff was a product of unlawful suggestion by Defendants' **DAVIS**, **WHITFIELD**, and/or **CLAVIN**, which suggestion included but was not limited to arranging for the victim to see the Plaintiff in custody prior to the identification procedure.  These Defendants later made fabrications in oral and written reports and in testimony to make it appear that the victim had positively identified **JARVIS BALLARD** after a proper and non-suggestive identification procedure.  However, the chances that the victim would have happened to identify the Plaintiff—who was innocent but already in custody in the next room—without improper suggestion by Defendants is minuscule.

28.    None of the individual Defendants ever disclosed that they had improperly influenced the victim's identification of the Plaintiff.

29.    Later that day, Quandreka Ballard was also arrested.  Quandreka truthfully told detectives that she, Ulysses Pierre, and Sidney Williams had traveled in a car to the victim's house the previous night.  She told the detectives that Pierre and Williams had raped and robbed the victim while she waited in the car.

30.    The victim's grandson was also questioned during the course of the day.  He stated that only two men had been involved in the crime.

31.    Sidney Williams was arrested that evening.  He told Defendant **WHITFIELD** that he and Pierre had committed the crime.  Williams specifically told Defendant **WHITFIELD** that the Plaintiff, **JARVIS BALLARD**, was not present and not involved in the crime.

32.    Approximately two weeks later, the victim provided another statement to Defendant **WHITFIELD**.  On information and belief, the victim at first told Defendant **WHITFIELD** once again that only two men were involved in the crime, which was consistent with her prior statements.  However, **WHITFIELD** then improperly suggested to the victim that three men had actually committed the crime.  The victim's statement on January 28, 1998 reads as follows:

> Q:    We have arrested three subjects in connection with the rape and burglary.  You were able to identify two of the subjects, do you feel that that there could have been three assailants inside your residence at the time of the assault?

> A:    Yes, it's entirely possible, I was face down on the bed during most of the sexual assault, and one of them kept leaving the room.  And coming back into the room.

33.    None of the Defendants **DAVIS**, **WHITFIELD**, or **CLAVIN** revealed in any written reports that the Plaintiff had been physically abused, assaulted, and coerced into making an incriminating statement.  Instead, these Defendants affirmatively concealed their knowledge of the coercion and abuse to which they had subjected the Plaintiff, and fabricated evidence (false reports and testimony) to conceal these facts.  They did so intending that the Plaintiff's unconstitutionally obtained statement would be used against him at trial and that he would be convicted despite compelling evidence showing his innocence.

34.     Similarly, none of these Defendants ever revealed that Pierre had been subjected to physical abuse in order to coerce the statement that claimed the Plaintiff had been involved in the crime.  Instead, Defendants fabricated evidence (false reports and testimony) to conceal these facts.

35.     On January 21, 1998, Pierre, Williams, and the Plaintiff were indicted for the crime of aggravated rape.  All three were held in custody pending trial.

36.     In April 1998, the Plaintiff saw a doctor because of the continuing pain he was suffering in his groin as a result of **DAVIS** kicking him.  The doctor referred him for surgery to repair a hernia from the assault.  The surgery occurred several months later.

37.     The Plaintiff and Pierre were jointly tried on the aggravated rape charge in July 1999.  At trial, the jury heard a skewed version of the facts that did not comport with the reality of what occurred, or even with the evidence that was contained in the files of the SBPSO and St. Bernard Parish District Attorney.

38.     For example, the victim testified that she was certain three men had been involved in the assault, and she gave an account of the crime that was at odds with what she repeatedly told police on the day the crime occurred.

39.     Defendant **WHITFIELD** bolstered the victim's inaccurate testimony regarding three men being involved in the crime by falsely testifying that the victim had previously reported to him that she had heard three voices during the ordeal.  **WHITFIELD** further testified that this "three- voices" statement was documented in the SBPSO reports regarding the incident.  Indeed, **WHITFIELD** went so far as to claim that the "entire police report reflects there were three perpetrators."  This testimony was in fact false, as none of the SBPSO police reports ever mention the victim hearing three different voices, nor do they reflect three people committing the

rape and burglary.  Instead, the reports document that the victim repeatedly stated only two men entered her house, and she only started to believe in the possibility of a third perpetrator weeks afterward when **WHITFIELD** suggested it to her because the police had  already arrested three people (Pierre, Williams, and the Plaintiff) for the crime.

40.     The State also introduced the Plaintiff's statement as evidence against him at trial. Defendant **DAVIS** read to the jury the typed statement he, **DAVIS**, had created based on his unlawful and abusive interrogation of the Plaintiff, and which he had forced the Plaintiff to sign. As noted above, this statement was in fact false and the product of unlawful abuse.

41.     Furthermore, Defendant **DAVIS** testified that the Plaintiff's statement was corroborated by the discovery of stolen property at the house on Licciardi Lane.  **DAVIS** testified that officers learned of the house through the Plaintiff's statement.  In fact, as described above, Pierre was the one who told detectives about the house on Licciardi Lane, and the Plaintiff was arrested when SBPSO deputies arrived to search it.  **DAVIS's** testimony that the Plaintiff's statement was corroborated by the recovery of stolen property was therefore false.

42.     The Plaintiff's criminal defense attorney was unable to effectively rebut the State's version of events at trial because he had not been provided, nor had he taken steps to obtain, numerous police reports that were in the files of either the District Attorney or the SBPSO, including but not limited to the reports detailing the victim's original statements to the police, the grandson's statement, Quandreka Ballard's statement, and the neighbors' original statements, all of which showed that only two men (Pierre and Williams) had perpetrated the crime.  The Plaintiff's criminal defense attorney also did not obtain substantial additional evidence demonstrating the Plaintiff's innocence, as described below.

43.     The Plaintiff maintained his innocence throughout the trial, and he testified that he was not involved in the crime.  He further testified that his statement had been coerced by the actions of Defendant **DAVIS**.

44.     Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN** all testified that they had not perpetrated any abuse or excessive force against the Plaintiff or his co-defendant Pierre.  They further testified they were not aware of any physical abuse of the Plaintiff, and that he had made his incriminating statement to **DAVIS** freely and voluntarily.  This testimony was false.

45.     The results of DNA testing on various pieces of evidence from the scene showed that Pierre and Williams had committed the rape.  The Plaintiff's DNA was not found at the crime scene or in the victim's rape kit.  That is because he was not present in the victim's house, and he was not involved in the crime.

46.     Despite the exculpatory DNA evidence, and based on the prosecution's skewed presentation at trial—which went virtually unrebutted by the defense because of its failure to obtain relevant reports—the Plaintiff was convicted of aggravated rape.  He was sentenced to life in prison.  The actual perpetrators of the crime, Pierre and Williams, were also convicted and sentenced to life in prison.  Quandreka Ballard was convicted of a lesser crime based on her role in the offense.

47.     For all the years after his conviction and sentence, the Plaintiff continued to assert his innocence.

48.     Eventually, the Plaintiff was able to contact Innocence Project New Orleans ("IPNO"), who agreed to take his case.

49.     IPNO began to investigate the Plaintiff's case, and uncovered substantial additional evidence proving his innocence.  In addition to discovering that the Plaintiff's defense counsel

had not been in possession of the exculpatory police reports described above at the time of trial, which failure materially hampered the defense, IPNO developed the following additional evidence of innocence:

■ Multiple witnesses would have testified that the Plaintiff was not in the company of Pierre, Williams, or Quandreka Ballard on the night of the crime. Instead, the Plaintiff had spent the night out socializing with friends. In fact, the neighbor's son who witnessed Pierre and Williams taking items from the victim's house gave the Plaintiff a ride home from a club in New Orleans on the night of the crime. The neighbor's son dropped the Plaintiff off at the Plaintiff's house approximately 20 to 25 minutes prior to the crime.

■ Williams and Quandreka Ballard had attended a party earlier in the evening of the crime, and while there Williams had borrowed the car used in the crime from his cousin. The cousin stated that the Plaintiff was not at the party and was not known to hang out with Williams.

■ An inmate at the St. Bernard Parish Jail on the date the Plaintiff was arrested and beaten into a confession by Defendant **DAVIS** would have testified that the Plaintiff entered jail with injuries consistent with being kicked in the groin. Specifically, the former inmate would have testified that the Plaintiff entered jail "tucked over and bent over," unable to stand up straight, and complaining of pain in his groin.

■ Additional DNA testing was done on items of evidence intimately connected with the victim, including undergarments and bedding from the night of the crime. These additional test results again excluded **JARVIS BALLARD** as a perpetrator of the crime. Furthermore, if the Plaintiff had in fact committed the acts described in his coerced

statement to Defendant **DAVIS**, it would be expected that his DNA would have been present at the scene.

■ Ulysses Pierre provided an affidavit in which he affirmed that the Plaintiff was not present or involved with the crime. Pierre stated that on the night of the crime, Williams and Quandreka Ballard had driven up to him while he was standing on a corner. He got in the car, and Williams proposed that they do the burglary. Pierre agreed. The three traveled to the victim's house, where Quandreka remained in the car while Pierre and Williams committed the rape and burglary. Via his affidavit, Pierre testified that after he was arrested, he told the officers he committed the crime alone. It was only when the officers hit him and threatened him that he changed his story and said that the Plaintiff was involved. Pierre named the Plaintiff because he believed nothing would happen to the Plaintiff, as the Plaintiff was actually innocent of the crime. Pierre further stated that during a meeting with his attorney and the Assistant District Attorney who prosecuted the case, he told the ADA that the Plaintiff was not involved in the crime.

■ The Plaintiff submitted himself to a polygraph examination, in which it was determined that he was being truthful when he denied involvement in the crime.

50.    Based on its investigation of the case, IPNO filed an application for post-conviction relief for the Plaintiff, asserting his actual innocence as well as other grounds for relief.

51.    Eventually, on August 2, 2021, the St. Bernard Parish District Attorney and IPNO filed a Joint Motion to Vacate Conviction and Dismiss the Indictment against the Plaintiff. In explaining his decision to join in this Motion, the St. Bernard District Attorney stated:

> In *State of Louisiana v. Jarvis Ballard*, new evidence came to light in the proceedings for Post-Conviction relief. DNA evidence, witnesses re-canting their prior statements and polygraph testing all supported the "actual innocence" claims of Jarvis Ballard. . . . As District Attorney I took an oath of office to follow the

law.  The District Attorney's role in the criminal justice system is to administer justice.  Our office will always protect the public and prove guilt when evidence of guilt exists; however, when proof of innocence is shown I will follow through with administering justice and correcting past errors.

52.    The Judge granted the Motion the same day, and the Plaintiff was released from prison.

53.    But for the wrongful conduct of the Defendants, **JARVIS BALLARD** would not have been charged with nor convicted of a crime that he did not commit, and he would not have spent over 23 years in prison.

54.    On information and belief, the Defendants' unconstitutional and unlawful conduct with regard to the interrogation and prosecution of the Plaintiff is not limited to this case.  Under former Sheriff Jack Stephens, it was the custom, policy, and/or pattern and practice of the St. Bernard Parish Sheriff's Office to engage in unconstitutional, illegal, and unprofessional interrogation techniques, which Sheriff Jack Stephens knew, must have known, or should have known, would produce false confessions.  On information and belief, this custom, policy, and/or pattern and practice existed amongst the members of the CID, including the individual Defendants named herein.

55.    It was further the custom, policy, and practice of employees of the St. Bernard Parish Sheriff's Office to fail to reveal material exculpatory information about their unlawful interrogation practices, including physical abuse of suspects.

56.    It was further the custom, policy and practice of employees of the St. Bernard Parish Sheriff's Office to engage in impermissibly suggestive identification practices, such as by suggesting to a victim that they choose a particular suspect out of a line-up.

57.    The pattern of constitutional violations resulting from abusive and unconstitutional interrogation of suspects, impermissibly suggestive identification procedures, as well as the practice of maliciously prosecuting individuals who confessed, without regard to evidence that

contradicted their coerced confessions, and failing to disclose these unconstitutional practices (even going so far as to provide materially false testimony at trial), was known by Sheriff Jack Stephens, or should have been known by him.  Sheriff Jack Stephens knew, must have known, or should have known of the obvious need to take some action to control, supervise, discipline, train, or intervene with regard to the methods and techniques of his employees to eliminate these constitutional violations.  However, Sheriff Jack Stephens failed to take action to correct these unconstitutional practices.

58.     The failure of Sheriff Jack Stephens to take appropriate action to control, supervise, discipline, train, investigate, or intervene with respect to SBPSO investigators amounted to a deliberate indifference to the unconstitutional practices of these investigators, including the Defendants herein.  Indeed, the constitutional violations in **JARVIS BALLARD's** case were the direct result of Sheriff Jack Stephens' general policy, and the Defendants' practice and custom of securing confessions through overly aggressive tactics, including physical abuse, and a specific policy in this case of doing whatever was necessary to secure a wrongful conviction for **JARVIS BALLARD**.

59.     The conduct of Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN** was beyond what is constitutionally acceptable, and these Defendants knew, must have known, or should have known that they were acting unconstitutionally and illegally.  Accordingly, because Defendants violated the clearly established constitutional rights of **JARVIS BALLARD**, and it would have been clear to any reasonable officer that their conduct was unlawful, they have no claim to immunity, either absolute or qualified.

60.     The Defendants are liable jointly and in solido for the wrongful conviction and incarceration of **JARVIS BALLARD**.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### Violation of Right Against Compelled Self-Incrimination under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983

61.    Plaintiff repeats and re-alleges each and every allegation of this Complaint.

62.    The individual Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN**, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive **JARVIS BALLARD** of his constitutional rights and did deprive him of said rights, specifically, the right against physical abuse intended to compel an incriminating statement, and the right against the use of an unconstitutionally obtained statement at trial, as protected by the Fifth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

63.    The Defendants' actions were reckless, willful, wanton, and/or malicious.

64.    Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of **JARVIS BALLARD**, but they failed to do so.

65.    Plaintiff further alleges that such acts as alleged herein were the proximate cause and cause in fact of the injuries and damages sustained by **JARVIS BALLARD**, specifically, his wrongful conviction and incarceration.

### SECOND CAUSE OF ACTION:
### Deprivation of Liberty Without Due Process of Law in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983

66.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

67.    The individual Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN**, individually and in concert, acted to deprive the Plaintiff of his right to liberty without due process by using physical abuse and coercion against him and against Pierre to extract false statements regarding the crime.

These false statements amounted to fabricated evidence that was used to deprive the Plaintiff of his liberty.

68.    Further, these Defendants, individually and in concert, deprived the Plaintiff of his right to due process by causing the rape victim to identify the innocent Plaintiff through improper direct or indirect suggestion during the identification process.

69.    Further, these Defendants, individually and in concert, failed to disclose and affirmatively concealed their improper and unconstitutional actions in this case, including by failing to document these actions in reports and then giving false testimony during court proceedings.  The information these Defendants concealed—e.g., that the Defendants had abused Pierre in order to get him to talk, that the Plaintiff was beaten and intimidated into a confession, and that the victim was improperly influenced in her identification of the Plaintiff—was exculpatory for the Plaintiff.  These Defendants in fact further fabricated evidence by affirmatively claiming that they had not engaged in these unconstitutional actions.

70.    Had Defendants truthfully disclosed their improper actions in this case, this evidence would have tended to prove the Plaintiff's innocence, cast doubt on the entire investigation of him, undermined the victim's supposed identification of him as one of the perpetrators, and ultimately prevented the Plaintiff's wrongful conviction and incarceration.

71.    The individual Defendants' actions violated the Plaintiff's right to due process under the Fourteenth Amendment, and as a direct and proximate result the Plaintiff was wrongly detained, prosecuted convicted, and incarcerated for over twenty-three years.

**THIRD CAUSE OF ACTION:**
**Engaging in Violations of Due Process that Shock the Conscience in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983**

72.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

73.      In their drive to convict the Plaintiff of the aggravated rape, the individual Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN** deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated the Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.

74.      Specifically, the Defendants used physical violence and intimidation to coerce an incriminating statement from the Plaintiff, and also from Pierre; ignored the overwhelming evidence that only Pierre and Williams committed the rape; improperly influenced the victim to identify the Plaintiff; and produced false reports and gave false testimony about these events.

75.      These actions violated the Plaintiff's right to due process under the Fourteenth Amendment, and as a direct and proximate result the Plaintiff was wrongly detained, prosecuted convicted, and incarcerated for over 23 years.

### FOURTH CAUSE OF ACTION:
### Violation of 42 U.S.C. § 1983 by Failure to Intervene

76.      Plaintiff repeats and re-alleges each and every allegation of the Complaint.

77.      By their conduct and under color of law, during the constitutional violations described herein, the individual Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN** stood by without intervening to prevent other Defendants and others yet unknown from violating the Plaintiff's constitutional rights, even though these Defendants were aware of the violations and had the opportunity to intervene to prevent them.

78.      The misconduct described herein was objectively unreasonable and undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

79.    The failure of the individual Defendants to intervene to prevent the violation of the

Plaintiff's rights was a direct and proximate cause of the Plaintiff's wrongful detention,

prosecution, conviction, and incarceration for over 23 years.

**FIFTH CAUSE OF ACTION:**
**42 U.S.C. § 1983 Conspiracy to Violate Constitutional Rights**

80.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

81.    The individual Defendants **DAVIS**, **WHITFIELD**, and **CLAVIN**, and others yet

unknown agreed among themselves and other individuals to act in concert to deprive the Plaintiff

of his clearly established right to liberty and due process of law.  In furtherance of this

conspiracy, the Defendants engaged in overt acts, including but not limited to:

(a)    Using physical violence and intimidation to extract statements from suspects;

(b)    Improperly influencing identification procedures;

(c)    Fabricating evidence;

(d)    Failing to disclose and actively concealing these actions.

82.    As a direct and proximate result of Defendants' conspiracy and actions in furtherance of

that conspiracy, the Plaintiff was wrongly detained, prosecuted, convicted and incarcerated for

over 23 years.

**SIXTH CAUSE OF ACTION:**
**42 U.S.C. § 1983 Claim for Supervisory Liability**

83.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

84.    To the extent that any one or more of the individual Defendants **DAVIS**, **WHITFIELD**,

and **CLAVIN** acted in a supervisory capacity, these Defendants acted deliberately, recklessly,

with deliberate indifference, and/or with gross negligence with respect to their supervision of

subordinate officers, who these officers knew, must have known, or should have known were acting to deprive the Plaintiff of his clearly established constitutional rights.

85.     The supervisory Defendants, by deliberately and/or recklessly failing to supervise their subordinate officers, and by their active participation in and facilitation of their subordinates' misconduct, caused their subordinates to deprive the Plaintiff of his clearly established constitutional rights, as alleged above.

86.     Moreover, the supervisory Defendants allowed their subordinates to act with impunity in an environment in which those subordinates were not supervised, disciplined, or trained, and in which those subordinates knew that their violations of the Plaintiff's rights would be facilitated, approved, and/or condoned the supervisory Defendants.

87.     As a direct and proximate result of supervisory Defendants' actions and inactions, the Plaintiff was wrongly detained, prosecuted, convicted and incarcerated for over twenty-three years.

## SEVENTH CAUSE OF ACTION:
### 42 U.S.C. § 1983 *Monell* Liability against SHERIFF JAMES POHLMANN, in his Official Capacity as Successor in Office to Sheriff Jack Stephens

88.     Plaintiff repeats and re-alleges each and every allegation of the Complaint.

89.     **SHERIFF JAMES POHLMANN**, in his official capacity as successor in office to former Sheriff Jack Stephens, was at all times the final policy maker for the SBPSO and responsible for the policies, practices, and customs of the SBPSO.

90.     The actions of the individual Defendants were undertaken pursuant to a policy, practice, and/or custom of the SBPSO, which included but were not limited to:

    (a)     Using physical violence and intimidation to extract statements from suspects;

    (b)     Improperly influencing identification procedures;

(c)     Fabricating evidence;

(d)     Failing to disclose and actively concealing these actions.

91.     Prior to and at the time of the unlawful interrogation, investigation, prosecution, and incarceration of the Plaintiff, the SBPSO, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to supervise and train its officers with respect to fundamental investigative techniques and duties, including proper limits on interrogation, proper identification procedures, the duty to avoid coaching witnesses, and the duty to provide truthful reports and testimony.

92.     Prior to and at the time of the unlawful interrogation, investigation, prosecution, and incarceration of the Plaintiff, the SBPSO, by and through its final policymakers, also maintained a policy, custom, or pattern and practice of failing to discipline misconduct by officers during the course of investigations.

93.     **SHERIFF JAMES POHLMANN**, in his official capacity as successor in office to former Sheriff Jack Stephens, knew or should have known of these policies and customs, and implemented them with deliberate indifference to the likelihood that wrongful convictions and incarceration would result from them.

94.     The policies and customs of the SBPSO as described herein were a moving force behind the violation of the Plaintiff's constitutional rights and the resulting wrongful conviction and incarceration.  These customs and policies directly caused the misconduct described in this Complaint.  The misconduct of the individual Defendants were carried out pursuant to these policies, customs, or patterns and practices of the SBPSO, and were directly and proximately caused by the failure of the SBPSO to train, supervise, and discipline its officers.

95.      As a direct and proximate result of the policies, customs, and patterns and practices of the SBPSO, for which **SHERIFF JAMES POHLMANN**, in his official capacity as successor in office to former Sheriff Jack Stephens, is responsible, the Plaintiff was wrongly prosecuted, convicted, and incarcerated for over 23 years.

<u>**EIGHTH CAUSE OF ACTION:**</u>
<u>**State Law Claim for Malicious Prosecution**</u>

96.      Plaintiff repeats and re-alleges each and every allegation of the Complaint.

97.      Defendants, acting separately and in concert, did willfully, unlawfully, maliciously, and without probable cause or legal justification, cause the Plaintiff to be detained, prosecuted, convicted, and incarcerated for the aggravated rape of the victim N.D.

98.      Defendants engaged in this conduct without concern for or consideration of the perceived guilt or innocence of the Plaintiff and for no purpose related to legitimate prosecutorial concerns.

99.      The Plaintiff is innocent of the crimes against N.D., as he has maintained since the day of his wrongful detention and unconstitutional interrogation.  His conviction for this crime has been vacated and the charges against him dismissed.

100.    As a direct and proximate result of Defendants' actions and inactions, the Plaintiff was wrongfully detained, prosecuted, convicted, and incarcerated for over twenty-three years.

<u>**NINTH CAUSE OF ACTION:**</u>
<u>**State Law Claim for Wrongful Conviction and Wrongful Imprisonment**</u>

101.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

102.    Defendants, acting separately and in concert, did willfully, unlawfully, maliciously, and without probable cause or legal justification, cause the Plaintiff to be detained, prosecuted, convicted, and incarcerated for the aggravated rape of the victim N.D., which wrongful conviction and incarceration persisted for over twenty-three years.

103.    Defendants intentionally, maliciously and with reckless disregard for and deliberate indifference to the Plaintiff's rights, used physical violence and intimidation to procure false statements; improperly influenced an identification procedure; failed to disclose exculpatory evidence; and fabricated evidence, all in an effort to procure the wrongful conviction and incarceration of the Plaintiff for a crime he did not commit.

104.    As a direct and proximate result of Defendants' actions and inactions, the Plaintiff was wrongly detained, prosecuted, convicted, and incarcerated for over twenty-three years.

### TENTH CAUSE OF ACTION:
### State Law Claim for Negligence and/or Gross Negligence

105.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

106.    Pleading in the alternative, the Plaintiff alleges that the Defendants failed to take due care, and instead were negligent or grossly negligent with respect to the investigation and prosecution of the crime against N.D.

107.    It was foreseeable that as a result of the Defendants' negligence, the Plaintiff would be wrongfully convicted and incarcerated, and in fact because of the Defendants' actions and inactions, the Plaintiff was wrongfully convicted and incarcerated for over 23 years for a crime he did not commit.

### ELEVENTH CAUSE OF ACTION:
### State Law Claim for Intentional Infliction of Emotional Distress

108.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

109.    Defendants, acting separately and in concert, did willfully, unlawfully, and maliciously engage in extreme and outrageous conduct in connection with the investigation and conviction of the Plaintiff.  This extreme and outrageous conduct was calculated to, and did in fact inflict, extreme emotional distress on the Plaintiff.  Defendants desired to inflict severe emotional

distress on the Plaintiff, or knew that severe emotional distress would be certain or substantially certain to result from their actions.

110.    As a direct and proximate result of Defendants' joint and several extreme and outrageous behavior, the Plaintiff suffered severe emotional distress for which he is entitled to damages.

## TWELTH CAUSE OF ACTION:
### State Law Claim for Vicarious Liability against SHERIFF JAMES POHLMANN, in his Official Capacity as Successor in Office to Sheriff Jack Stephens

111.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

112.    At all times relevant herein, the individual Defendants were acting in the course and scope of their employment with SHERIFF JAMES POHLMANN, in his official capacity as successor in office to former Sheriff Jack Stephens.

113.    Accordingly, SHERIFF JAMES POHLMANN, in his official capacity as successor in office to former Sheriff Jack Stephens, is liable for the state law torts of his employees.

## THIRTEENTH CAUSE OF ACTION:
### Direct Action against ABC and XYZ Insurance Companies

114.    Plaintiff repeats and re-alleges each and every allegation of the Complaint.

115.    On information and belief, Defendants **ABC** and **XYZ INSURANCE COMPANIES** have issued and currently have in effect one or more policies of insurance covering one or more of the claims against Defendants herein.  For valuable consideration received, these policies obligated Defendants **ABC** and **XYZ INSURANCE COMPANIES**, jointly or severally, or both, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to the Plaintiff.

116.    By reason of their illegal and unconstitutional acts, Defendants are liable unto the Plaintiff for damages and injuries he has suffered as a result of their actions and inactions.  On information and belief, Defendants **ABC** and **XYZ INSURANCE COMPANIES** are obligated

to indemnify the insured Defendant(s) for these sums, notwithstanding any claims of privilege or immunity that the individual Defendants may raise.

117.    Pursuant to La. R.S. 22:1269, the Plaintiff brings a direct cause of action against Defendants **ABC** and **XYZ INSURANCE COMPANIES** to recover any and all sums they are obligated to pay the Plaintiff on behalf of their insureds.

## VII. DAMAGES

118.    As a result of the actions of the Defendants as described above, the Plaintiff incurred damages in the form of violation of his constitutional rights, wrongful conviction, and wrongful imprisonment for 23 years, 6 months, and 23 days.

119.    Plaintiff suffered extreme physical, mental, and emotional hardship and injuries as a result of his wrongful conviction and incarceration. Additionally, he suffered loss of employment, wages, and earnings; consortium and friendship; and all other deprivations associated with imprisonment.

120.    The Plaintiff seeks compensatory and punitive damages for the injuries he has suffered and for the Defendants' extreme and unconstitutional conduct.

121.    The Plaintiff also seeks attorneys' fees pursuant to 42 U.S.C. § 1988.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that after due proceedings are had, there be judgment rendered herein in his favor and against all Defendants individually and jointly, as follows:

1.    Compensatory and punitive damages as prayed for herein;

2.    Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, and all costs of these proceedings and legal interest;

3.    All other relief as appears just and proper to this Honorable Court.

Respectfully submitted,

/s/ Stephen J. Haedicke
_____
**STEPHEN J. HAEDICKE** (#30537)
Law Office of Stephen J. Haedicke, LLC
1040 Saint Ferdinand St.
New Orleans, LA 70117
(504)291-6990 Telephone
(504)291-6998 Fax
stephen@haedickelaw.com

-And-

Samuel H. Winston (Bar #34821)
Evan J. Bergeron (Bar # 33725)
Jeigh L. Britton (Bar #39820)
WINSTON BERGERON, LLP
1700 Josephine Street
New Orleans, Louisiana 70113
Telephone: (504) 577-2500
Facsimile: (504) 577-2562
Email: sam@winstonbergeron.com
       evan@winstonbergeron.com
       jeigh@winstonbergeron.com